UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————

FASHION WEEK, INC.,

                      **Plaintiff,**         16-cv-5079 (JGK)

       **v.**

                                      MEMORANDUM OPINION AND

COUNCIL OF FASHION DESIGNERS OF     ORDER
AMERICA, INC., CFDA FOUNDATION INC.,
and WME IMG LLC,[1]

                     **Defendants.**
————————————————————————————————

JOHN G. KOELTL, District Judge:

    This case is about the ownership and use of "NEW YORK

FASHION WEEK" and its acronym "NYFW," and "NYFW THE RUNWAY

SHOWS." The plaintiff, Fashion Week Inc. ("FWI"), brings this

action against the Council of Fashion Designers of America, Inc.

and the CFDA Foundation, Inc., (together "CFDA") and WME IMG LLC

("WME-IMG") (collectively referred to as the "defendants")

alleging trademark dilution, unfair competition and false

designation of origin, and trademark infringement in violation

of the Lanham Act, 15 U.S.C. § 1051 et seq., as well as claims

for violations of New York State law.

    On June 28, 2016, FWI sought a temporary restraining order

("TRO") and a preliminary injunction barring CFDA and WME-IMG

from using FWI's asserted trademarks, NEW YORK FASHION WEEK,

NYFW, and NYFW THE RUNWAY SHOWS, and terms infringing on those

marks in connection with live semi-annual events in New York

---

[1] The Clerk of Court is requested to amend the caption to correct the spelling
of WME IMG LLC.

during which fashion designers launch new clothing lines. On June 29, 2016, the Court held a hearing on the request for a TRO and denied the request concluding that the plaintiff had not made the requisite showing of irreparable harm. Dkt. No. 5. On August 4, 2016, the Court heard oral argument on the plaintiff's motion for a preliminary injunction. The request for a preliminary injunction is **denied**.

## I.

The following facts are based on the parties' submissions in connection with the TRO and the preliminary injunction.

CFDA, with its principal places of business in New York, is a non-profit trade association whose membership includes more than 4,500 members, all from America's foremost womenswear, menswear, jewelry, and accessory designers. Kolb July Decl. ¶ 2. WME-IMG, also based in New York, is a management and production company. Compl. ¶¶ 11-13. CFDA schedules and coordinates and WME-IMG produces fashion events in New York City comprised of a series of fashion shows featuring the works of prominent designers for members of the fashion industry. Kolb July Decl. ¶¶ 3-4.

These shows feature the work of famous designers and give designers the opportunity to showcase their designs to prospective retailers and promote them to the media. Kolb July Decl. ¶¶ 3-5. These events date back to 1943 when "Press Week"

2

was launched, an event dedicated to promoting American designers of women's fashion. Kolb July Decl. ¶¶ 7-8.

Since its founding in 1962, CFDA has organized semi-annual womenswear fashion events, in addition to other related events focusing on different areas of the fashion industry. Kolb July Decl. ¶ 8. The week-long events consist of multiple presentations and installations featuring the works of CFDA members and other fashion industry professionals, which annually draw over 230,000 attendees and generate close to $900 million. Kolb July Decl. ¶ 10. CFDA oversees the scheduling and organization logistics for all the week's events as a whole, and WME-IMG is responsible for the official fashion week venue, where the majority of designer runway shows occur. Kolb July Decl. ¶¶ 5, 11. Taken together, the semi-annual week-long events in New York are recognized as one of the four major fashion weeks in the world. Kolb July Decl. ¶ 3. The New York City government also works with CFDA to schedule and promote the event. Kolb Decl. ¶ 10; Calvaruso July Decl., Ex. 2.

From 1993 to 2015, the CFDA/WME-IMG events were formally named after their location or sponsor. Such names included "Olympus Fashion Week" and "Mercedes-Benz Fashion Week." Kolb Decl. ¶¶ 10-11.  In the press and the fashion industry, the events were widely referred to as "New York Fashion Week" from at least 1993 onwards. Kolb July Decl. ¶¶ 9, 11; e.g., Kolb July

Decl., Ex. 3.  After Mercedes-Benz ceased sponsoring the CFDA/WME events in July 2015, WME and CFDA announced they would be featuring "New York Fashion Week," "NYFW," and in the case of WME-IBM specifically, "NYFW The Shows," in their promotion and production of the fashion events. Compl. ¶ 40. In April 2015, WME-IMG also announced that it would be using a new domain name, NYFW.com, as the address for the events and began using NYFW on social media platforms. Calvaruso July Decl., Exs. 2, 4.

The plaintiff, FWI, is a corporation organized under New York law and is in the business of producing fashion shows and selling tickets to consumers and fashion aficionados. Compl. ¶¶ 9-10. Intended to attract a consumer audience, FWI fashion shows position themselves as publicly accessible alternatives to CFDA and WME-IMG fashion events which are restricted to members of the fashion industry and media only. FWI shows are scheduled to coincide with the defendants' semi-annual schedule. Compl. ¶¶ 15-16. FWI only puts on a one-day show during the defendants' week of activities. See Compl. ¶¶ 23-24, 28, 35-36 (describing one-day events).

FWI was founded in November 2013 by Trisha Paravas. Compl. ¶ 15. Prior to incorporating FWI, Paravas produced "consumer fashion shows" under a company named "Roche Inc." ("Roche"). Compl. ¶¶ 18, 29. In December 2012, Roche successfully applied for and obtained a trademark for the term NEW YORK FASHION

4

SHOWS. Compl. ¶ 23. From December 2012 to September 2013, Roche produced three fashion shows in total, all under the name "New York Fashion Shows." Compl. ¶¶ 24-26. In November 2013, Paravas renamed Roche "Fashion Week Inc.," and incorporated it under the same name. Compl. ¶¶ 15, 29.

On November 14, 2013, FWI applied to trademark the term NEW YORK FASHION WEEK on the Supplemental Register, and the application was granted on July 29, 2014. Compl. ¶ 30; Paravas TRO Decl., Ex. S. The trademark is for online entertainment ticket agency services. Paravas TRO Decl., Ex. S. According to FWI, FWI produced a show under the NEW YORK FASHION WEEK mark in September 2014. Compl. ¶ 32. In total, FWI produced and sold tickets to two fashion shows under the NEW YORK FASHION WEEK mark—a show in September 2014 and a show in September 2015. Compl. ¶¶ 33, 35. While the shows organized under Roche earned no profit, 500 tickets were sold to the September 2014 FWI show and FWI earned a $25,000 profit, while the September 2015 show earned $30,000, also selling 500 tickets. Compl. ¶¶ 34, 36.

In January 2015, CFDA filed a petition to cancel FWI's July 2014 registration for NEW YORK FASHION WEEK. Paravas TRO Decl., Ex. EE. Paravas spoke to CFDA's counsel about collaborating with CFDA shortly after the petition to cancel was filed. Reiner July Decl., ¶ 14.  FWI subsequently moved to dismiss CFDA's cancellation petition on the grounds that CFDA had failed to

prosecute the petition, and the Trademark Trial and Appeal Board granted the motion on February 2, 2016. Paravas TRO Decl., Ex. HH.

In May 2015, after WME-IMG had announced its intention to use NYFW online to promote the CFDA/WME-IMG fashion events, FWI applied for the NYFW mark for its online ticket sales for entertainment and fashion shows. The mark was granted and registered on the Principal Register on December 15, 2015. Compl. ¶ 37; Calvaruso July Decl., Ex. 2. In August 2015, WME-IMG sent FWI a letter requesting that FWI cease promoting its fashion shows online in a manner that might mislead consumers into thinking they were purchasing tickets to the CFDA/WME-IMG events. Calvaruso July Decl., Ex. 5. In discussions between Paravas and WME-IMG representatives, Paravas offered to transfer FWI's trademarks and sponsors to WME-IMG and threatened litigation, delay, and bad press. Id., Ex. 6. WME-IMG declined. Calvaruso July Decl., ¶ 9. FWI subsequently filed trademark applications for the marks NEW YORK FASHION WEEK THE RUNWAY SHOWS, NYFW THE RUNWAY SHOWS, NYFW and NEW YORK FASHION WEEK for organization of fashion shows for entertainment purposes. Calvaruso July Decl., Exs. 7-10. Applications to register the marks for the organization of fashion shows have not been granted. Id., Exs. 9-10.

After CFDA and WME-IMG announced their intention in April 2015, to use NYFW in promoting their events, and after the defendants announced their intention to use "New York Fashion Week" in July 2015, CFDA and WME-IMG organized and produced the September 2015 and February 2016 fashion events. On April 19, 2016 and June 13, 2016, FWI sent cease and desist letters to WME-IMG demanding it cease using the trademarks. Paravas July Decl., ¶ 35; Calvaruso TRO Decl., ¶¶ 8-9.

FWI filed this lawsuit on June 28, 2016. Dkt. No. 1. At the hearing for the preliminary injunction, CFDA and WME-IMG represented that their next fashion events were scheduled to begin on September 8, 2016. FWI represented that it did not have any fashion shows presently scheduled and that plans to hold an event in February 2017 had been put on indefinite hold after FWI's anticipated sponsors severed ties with FWI.

## II.

The requirements for issuing a preliminary injunction are well established. "A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008).

**III.**

In the aftermath of the Supreme Court's decision in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393 (2006), holding that no presumption of irreparable injury is available in a patent case based solely on a showing of likelihood of success on the merits, the Court of Appeals held in Salinger v. Colting, 607 F.3d 68, 76-77 (2d Cir. 2010), that in a copyright case, a plaintiff must show actual irreparable harm. It follows that a likelihood of irreparable injury cannot be presumed in a trademark infringement case simply because a plaintiff shows a likelihood of success on the merits. See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 511 F. App'x 81, 85 (2d Cir. 2013) (summary order); New Look Party Ltd. v. Louise Paris Ltd., No. 11-cv-6433 (NRB), 2012 WL 251976, at *10 (S.D.N.Y. Jan. 11, 2012) ("Because we can no longer 'adopt a categorical or general rule or presume that the plaintiff will suffer irreparable harm' in copyright and trademark cases, Salinger, 607 F.3d at 80 (internal quotation marks omitted), plaintiff must make an independent showing of such harm."). In this case, as discussed below, the issue of whether a likelihood of success on the merits can lead to a presumption of irreparable injury is academic because FWI has not shown either a likelihood of success or irreparable injury.

The significance of delay has evolved with the erosion of a presumption of irreparable injury. Whereas previously a presumption of irreparable harm was rebutted if a plaintiff delayed in bringing an infringement suit or in moving for preliminary injunctive relief, see Tough Traveler, Ltd. v. Outbound Prods._, 60 F.3d 964, 968 (2d Cir. 1995), courts in this district now regard delay as one of several factors to consider in ascertaining whether the plaintiff has shown irreparable harm. See Juicy Couture, Inc. v. Bella Int'l Ltd., 930 F. Supp. 2d 489, 504 (S.D.N.Y. 2013) ("Now that courts may not presume irreparable harm, however, the effect of a finding of delay is uncertain."); New Look, 2012 WL 251976, at *10 ("[Delay] is now simply one factor to be considered in determining whether a plaintiff will, in fact, suffer irreparable harm in the absence of a preliminary injunction."). However, delay is a significant factor to be considered in assessing whether the plaintiff can show irreparable injury. "[F]ailure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Tough Traveler, 60 F.3d at 968 (internal quotation marks and citation omitted); see also Brockmeyer v. The Hearst Corp., No. 01-cv-7746 (JGK), 2002 WL 1402320, at *4 (S.D.N.Y. June 27, 2002). With respect to delay, the relevant

period of delay begins when the plaintiff learned of the alleged infringement. <u>Tough Traveler</u>, 60 F.3d at 968.

In this case, FWI's delay in filing suit and in seeking injunctive relief argues strongly against granting the preliminary injunction. The evidence shows that FWI should have been aware of the defendants' competing claim to NEW YORK FASHION WEEK and NYFW long before FWI sought a preliminary injunction in late June 2016. In January 2015, CFDA filed a petition to cancel the NEW YORK FASHION WEEK mark, and the petition included CFDA's representation that <u>it</u> had made continuous use of the trademark since at least 1994. <u>See</u> Paravas TRO Decl., Ex. EE. In April 2015, WME-IMG announced that it would be using NYFW as part of its domain name and on social media platforms. <u>See</u> Calvaruso July Decl., Ex. 2. Moreover, in August 2015, the plaintiff was on notice that WME-IMG and CFDA would be unveiling a new logo for their events using "New York Fashion Week" and NYFW. <u>Id.</u>, Ex. 4. In fact, in its papers in support of its motion for a TRO, the plaintiff included a news article from January 2015, reporting that the defendants' event in September 2015 would be called "New York Fashion Week." Paravas TRO Decl., Ex. Z.

FWI claims that it did not sue the defendants because it was investigating possible infringement. Beginning in August 2015 and through September 2015, WME-IMG and FWI engaged in

10

discussions over FWI's ticket sales and the possibility of consumers making a false association between FWI and WME-IMG's products. Calvaruso July Decl., Exs. 5-6. According to Paravas, she was waiting to see what WME-IMG would do in the fall of 2015 and in early 2016. Paravas July Decl. ¶¶ 27-28.

To the extent that the plaintiff argues that its delay in requesting a preliminary injunction was caused by the fact FWI was engaging in settlement discussions with WME-IMG about WME-IMG's branding, the plaintiff has not adduced any evidence that WME-IMG suggested it would revert back to a sponsor-based title for its events. Calvaruso July Decl., ¶¶ 8-9. In light of the very public announcement of WME-IMG's use of "New York Fashion Week," at least by August 2015, the plaintiff's belief that WME-IMG would reverse course was unreasonable. The plaintiff certainly knew after the shows in September 2015 and February 2016, that CFDA and WME-IMG were using the marks it claimed a right to use, but FWI continued to do nothing. See Paravas July Decl. ¶¶ 34-35.

The plaintiff argues that settlement discussions with WME-IMG continued through January 2016, but FWI has not provided any credible factual evidence to support this assertion. Paravas July Decl., ¶ 25. Moreover, even taking as true the plaintiff's story that settlement discussions only ended in January 2016, the alleged lapse between settlement discussions ending in

January 2016 and the filing of the preliminary injunction in late June 2016 is completely unexplained. This six-month delay is wholly unaccounted for and further counsels against a finding of irreparable injury. See New Look, 2012 WL 251976, at *11; Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985) (sense of urgency undercut by the fact the plaintiff waited more than ten weeks after directly learning of the alleged infringer's plan and more than nine months after it received notice through the press).

FWI argues that although it was aware that the defendants were using "New York Fashion Week" and NYFW for their September 2015 events, FWI was unaffected by this branding until after August 2015 and that the time for FWI to address the defendants' infringement ripened in April 2016. The plaintiff relies on the doctrine of progressive encroachment which "focuses the court's attention on the question of whether defendant, after beginning its use of the mark, redirected its business so that it more squarely competed with plaintiff and thereby increased the likelihood of public confusion of the marks." ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C., 314 F.3d 62, 70 (2d Cir. 2002) (applying the doctrine of progressive encroachment to a claim of laches on a motion for summary judgment). As CFDA points out however, FWI

cites no cases extending the doctrine of progressive encroachment to justify a preliminary injunction.

Because FWI unduly delayed seeking relief for at least twelve months, and for as many as eighteen months, after becoming aware that the defendants were using the major marks FWI claims, the urgency necessary to enter a preliminary injunction pending a decision on FWI's claims does not exist. See Transcience Corp. v. Big Time Toys, LLC, 50 F. Supp. 3d 441, 458 (S.D.N.Y. 2014) (nine months constituted too long of a delay); New Look, 2012 WL 251976, at *10.

Moreover, FWI has also failed to show actual irreparable harm. "Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither calculable nor precisely compensable." U.S. Polo Ass'n, Inc. v. PRL USA Holdings Inc., 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011) (internal quotation marks and citations omitted); New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010) ("Prospective loss of . . . goodwill alone is sufficient to support a finding of irreparable harm.") (internal quotation marks and citations omitted)); Juicy Couture, 930 F. Supp. 2d at 503.

FWI argues that it has and will continue to suffer the loss of good will. But FWI has not provided sufficient evidence of its goodwill in the industry. According to FWI, it produced two fashion shows in 2014 and 2015 after registering the NEW YORK FASHION WEEK mark in July 2014. FWI only presented evidence it used the mark in connection with the September 2015 fashion show. Paravas TRO Decl., Ex. V. FWI used a different name for the September 2014 fashion show. Paravas TRO Decl., Ex. T (advertisement for "Fashion Week New York"); Paravas July Decl., Ex. K. FWI also did not submit evidence of brand loyalty or recognition in the industry. See New Look, 2012 WL 251976, at *10. FWI is in a very different position from that of the plaintiffs in cases like Juicy Couture, 930 F. Supp. 2d at 503, and NYC Triathlon, 704 F. Supp. 2d at 343, who had amassed goodwill over a period of several years and had expended vast amounts of resources to establish a well-known brand.

Moreover, FWI's motion for a preliminary injunction should be denied because FWI has not demonstrated either a likelihood of success on the merits of its claim or sufficiently serious questions going to the merits of its claims plus a balance of hardships tipping in its favor.

FWI asserts several federal claims. Count One alleges federal trademark dilution in violation of the Trademark Dilution Act, 15 U.S.C. § 1125(c), Compl. ¶¶ 57-63; Count Two

alleges unfair competition and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B), Compl. ¶¶ 64-73; Count Three alleges trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), Compl. ¶¶ 74-80. FWI also asserts three claims under New York law that overlap with its federal claims, Compl. ¶¶ 81-94.

The Trademark Dilution Act provides that "the owner of a famous mark shall be entitled . . . to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c)(1). Section 43(a) protects both registered and unregistered marks against the use of any symbol or mark that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . ." 15 U.S.C. § 1125(a)(1)(A). Section 32(1) provides protection against the "reproduction, counterfeit, copy, or colorable imitation of a registered mark" where "such use is likely to cause confusion, or to cause mistake, or to deceive. . . ." 15 U.S.C. § 1114(1)(a).

Essential to all its claims, FWI bears the burden of showing that it has an exclusive right to the marks and that its marks are entitled to protection. See The Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d 955, 960 (2d Cir. 1996); Russian Kurier, Inc. v. Russian Am. Kurier, Inc., 899 F. Supp. 1204, 1208 (S.D.N.Y. 1995); Les Ballets Trockadero de Monte Carlo, Inc. v. Trevino, 945 F. Supp. 563, 568-69 (S.D.N.Y. 1996).

A certificate of registration of a trade or service mark issued by the United States Patent and Trademark Office is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate. . . ." 15 U.S.C. § 1057(b).

In this case, FWI registered NEW YORK FASHION WEEK on the Supplemental Register and the registration is limited to online entertainment ticket agency services. Paravas TRO Decl., Ex. S. Like the registration for NEW YORK FASHION WEEK, the registration for NYFW THE RUNWAY SHOWS, approved in May 2016, appears only on the Supplemental Register and is limited to online entertainment ticket agency services. Compl., Ex. C.  A registration on the Supplemental Register does not enjoy the

16

advantages of 15 U.S.C. § 1057(b). See 15 U.S.C. § 1094. For a registration on the Supplemental Register, there is no prima facie evidence of the validity of the registered mark, the registrant's ownership of that mark, and exclusive right to use that mark. The "very presence [of the mark] on the Supplemental Register indicates a preliminary determination that the mark is not distinctive of the applicant's goods." 3 McCarthy on Trademarks and Unfair Competition § 19:36 (4th ed.).

With respect to FWI's other mark, NYFW, FWI argues that because the NYFW mark is registered on the Principal Register, it does enjoy a presumption of validity under § 1057(b). However, the presumption of an exclusive right to use the NYFW mark extends only to the goods noted in that registration certification. See Gameologist Grp., LLC v. Sci. Games Int'l, Inc., 838 F. Supp. 2d 141, 153 (S.D.N.Y. 2011), aff'd, 508 F. App'x 31 (2d Cir. 2013). NYFW may have a presumption of validity with respect to online entertainment ticket agency sales, Paravas TRO Decl., Ex. X ("for on-line entertainment ticket agency sales"), but NYFW does not enjoy a presumption of validity for use as a mark for the organization of fashion shows.

Because FWI does not have marks registered on the Principal Register for the organization of fashion shows—the area in which FWI seeks to preclude the defendants' use of the marks— FWI must

17

show that NEW YORK FASHION WEEK, NYFW, and NYFW THE RUNWAY SHOWS are either inherently distinctive or have acquired distinctiveness through secondary meaning. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992). A mark must be "distinctive" and not "generic" in order to qualify as a protectable trademark. Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 216 (2d Cir. 2012) (citation omitted). For trademark purposes, terms or phrases are usually classified as (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976). "Generic terms are never entitled to protection. Suggestive, arbitrary and fanciful terms, on the other hand, are inherently distinctive and generally entitled to protection. Descriptive terms are not inherently distinctive, but are nonetheless entitled to protection if they acquire secondary meaning in the marketplace." Paco Sport, Ltd. v. Paco Rabanne Parfums, 86 F. Supp. 2d 305, 310 (S.D.N.Y. 2000); see also Abercrombie & Fitch, 537 F.2d at 9–11. Thus, "[t]o qualify for trademark protection, an owner of a descriptive mark must demonstrate that the mark had acquired secondary meaning before its competitor commenced use of the mark." PaperCutter, Inc. v. Fay's Drug Co., Inc., 900 F.2d 558, 564 (2d Cir. 1990); see also Kaplan, Inc. v. Yun, 16 F. Supp. 3d 341, 347 (S.D.N.Y. 2014).

The marks at issue in this case are not inherently distinctive because FWI does not contend that the terms NEW YORK FASHION WEEK, NYFW, and NYFW THE RUNWAY SHOWS are suggestive, fanciful, or arbitrary. Indeed the parties appear to agree that the terms are descriptive. Accordingly, FWI's marks are only protectable trademarks if they acquired secondary meaning before the defendants commenced their use of the allegedly infringing marks no later than August 2015. See id.

A mark has acquired secondary meaning if "the primary significance of the term in the minds of the consuming public is not the product but the producer." See Centaur Commc'ns Ltd. v. A/S/M Commc'ns, Inc., 830 F.2d 1217, 1221 (2d Cir. 1987) (internal quotations and citation omitted). "[S]omeone seeking to establish secondary meaning must show that the purchasing public associates goods designated by a particular mark with but a single—although anonymous—source." Id. (citation omitted). The following factors help determine whether a mark has acquired secondary meaning "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use." See id. at 1222.

FWI has not adduced any evidence showing the typical indicia of secondary meaning, such as consumer surveys,

19

unsolicited media coverage, or advertising expenditures, and can only point to two shows with 500 attendees at each show. The short length of FWI's use of marks also cuts against a finding of secondary meaning. The use of "branding" in the form of place cards, VIP tickets, banners, and give away bags, Paravas July Decl., Exs. I-K, do not show that the minds of the consuming public associated NEW YORK FASHION WEEK, NYFW, or NYFW THE RUNWAY SHOWS with the plaintiff's business. Moreover, FWI cannot rely on past shows and the expenditures associated with past shows under a different mark to make a showing of secondary meaning. See Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey, 894 F. Supp. 2d 288, 321 (S.D.N.Y. 2012) (collecting cases), as amended (Sept. 19, 2012).[2]

With respect to exclusivity of use, FWI concedes that "New York Fashion Week" has "been used as a general descriptor of multiple fashion events taking place bi-annually in New York City" but argues that the defendants' alternative branding campaigns only began in August 2015. Paravas July Decl. ¶ 5.

---

[2] FWI argues that consumer confusion shows that FWI's marks had achieved secondary meaning in the marketplace. FWI argues that people emailed FWI, asking to purchase tickets to the CFDA/WME-IMG events, and that this confusion shows that FWI is prejudiced by CFDA/WME-IMG's alleged infringing use of FWI's marks. Paravas July Decl., Ex. N; see also Quereshi Aff. ¶ 6(guests that arrived to FWI's shows believed that the shows were produced and managed by the defendants). This evidence undercuts FWI's attempts to show secondary meaning. Based on the evidence on the record before this Court, it is the defendants, not the plaintiff, who are likely to show that when faced with an advertisement for tickets to "New York Fashion Week" consumers associated that term with the defendants.

The defendants contend that FWI did not make exclusive use of
the mark, and that in fact, CFDA and WME-IMG, and their
predecessors made prior use of the asserted marks in connection
with their promotion and organization of fashion events over the
last two decades. Although it is clear that the formal name
given to CFDA/WME-IMG's fashion events varied from year to year
based on the sponsor associated with a given year's event, the
evidence of the defendants' prior use and identification with
"New York Fashion Week" undercuts FWI's claim to the NEW YORK
FASHION WEEK mark. Indeed there is no persuasive evidence that
the purchasing public associates the plaintiff, which runs one
consumer-oriented fashion show on one day during the series of
events that constitute New York Fashion Week, with the organizer
of New York Fashion Week or with the organization that actually
puts on the shows that make up New York Fashion Week.

Moreover, the use of sponsorship branding does not negate
the defendants' right to use "New York Fashion Week" and the
claim to protectable rights arising from that use. See Phillips-
Van Heusen Corp. v. Calvin Clothing Co., 444 F. Supp. 2d 250,
255 (S.D.N.Y. 2006) ("[A]bbreviations and nicknames of trademarks
or names used *only* by the public give rise to protectible rights
in the owners of the trade name or mark which the public
modified. Such public use by others inures to the claimant's
benefit and, where this occurs, public use can reasonably be

21

deemed use 'by' that party in the sense of a use on its behalf."
(internal quotation marks and citations omitted)); <u>Diarama
Trading Co. v. J. Walter Thompson U.S.A., Inc.</u>, No. 01-cv-
2950(DAB)(DCF), 2005 WL 2148925, at *7 (S.D.N.Y. Sept. 6, 2005)
("[P]ublic identification of a trade name may be inferred on the
basis of indirect evidence regarding . . . use of the word or
phrase in advertising brochures, catalogs, newspaper ads, and
articles in newspapers and trade publications, and third-party
public use of the term in the trade and by the news media inures
to the benefit of the claimant of the priority trade name
rights, even if the claimant itself has not made use of the
term." (internal quotation marks and citations omitted)), <u>aff'd
sub nom. Diarama Trading Co. v. Thompson</u>, 194 F. App'x 81 (2d
Cir. 2006). The defendants make a persuasive argument that the
terms "New York Fashion Week" and NYFW have been associated with
them and not with the plaintiff who has attempted to cash in on
the decades of publicity for New York Fashion Week that the
plaintiff had nothing to do with.

The timeline of FWI's trademark applications and
registrations is also significant. The registration for NEW YORK
FASHION WEEK in July 2014 was only on the Supplemental Register
and came long after the term was generally associated with the
defendants. FWI filed its application for the NYFW trademark
*after* WME-IMG announced it would be using NYFW on its website

22

and invited readers to the new NYFW.com website. Calvaruso July
Decl., Ex. 2. Similarly, FWI filed an application for NYFW THE
RUNWAY SHOWS after WME-IMG used the mark NYFW: THE SHOWS. Id.,
Exs. 4, 7-10.[3] FWI cannot show secondary meaning based solely on
trademark registrations for limited use, particularly in light
of the defendants' apparent superior rights to the marks.

Based on the extensive evidence in the form of affidavits
of industry professionals,[4] media coverage, and the plaintiff's
own evidence of alleged confusion in the marketplace showing the
strong association between the marks and the defendants, it is
clear that the public strongly associates "New York Fashion
Week" with the events organized by CFDA and produced by WME-IMG.

At this stage in the litigation, it is FWI's burden to show
it has protectable trademark rights in NEW YORK FASHION WEEK,
NYFW, and NYFW THE RUNWAY SHOWS. Based on the available
evidence, the plaintiff has failed to satisfy its burden to show

---

[3] At the argument of the pending motion, FWI and the defendants primarily
focused on the NYFW and NEW YORK FASHION WEEK marks. To the extent that FWI
also seeks a preliminary injunction enjoining the defendants from using marks
that infringe on NYFW THE RUNWAY SHOWS, FWI has failed to show it has a
protectable trademark. As explained above, the registration for NYFW THE
RUNWAY SHOWS appears only on the Supplemental Register and FWI has not
adduced sufficient evidence showing that NYFW THE RUNWAY SHOWS has secondary
meaning.
[4] The defendants submitted affidavits of various professionals in the fashion
industry that underscore the defendants' association with the marks FWI
claims as its own. For example, according to Ms. Wintour, the editor-in-chief
of Vogue, "New York Fashion Week has always been associated with the events
scheduled by the CFDA, and it has always been widely known that the CFDA
. . . scheduled and organized New York Fashion Week." Wintour Decl. ¶ 3.
Similarly, other industry professionals filed affidavits in support of CFDA,
stating that "New York Fashion Week" has always been associated with the
events organized by CFDA. Vitale Decl. ¶ 3.

that the consuming public and the fashion industry associate the marks in this case with FWI. Accordingly, FWI has failed to make the requisite showing necessary to prove that FWI has a protectable trademark, making it impossible to conclude that FWI has a likelihood of success on its trademark infringement and dilution claims. FWI argues that its marks have acquired high levels of consumer recognition and are strong signifiers of FWI and its consumer-oriented fashion shows. But the evidence shows that FWI produced at most two shows while using the trademark NEW YORK FASHION WEEK, and has produced no shows since registering NYFW in December 2015. FWI appears to have some trademark rights—limited ones—in online entertainment tickets sales, but seeks to enforce those rights to preclude the use of the trademarks in the broad ambit of organizing and producing fashion shows.

The balance of the equities and the public interest also argue against granting a preliminary injunction in this case. The equities tip in favor of the defendants who would be seriously impacted if they were enjoined from using terms that in the fashion industry, are synonymous with the events and activities CFDA and WME-IMG expend so many resources to organize and promote. Moreover, the public interest argues against an injunction because the defendants' New York Fashion Week is an important asset to the New York economy, employs many people,

24

and because the term "New York Fashion Week" and related terms are useful for the promotion of New York's fashion industry and a bar on using them would present a serious disruption to the defendants' upcoming events.

Accordingly, FWI's motion for a preliminary injunction is denied.

## CONCLUSION

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law. The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the parties' arguments are either moot or without merit. FWI's motion for a preliminary injunction is denied. The Clerk of Court is directed to close all pending motions.


**SO ORDERED.**

**Dated:     New York, New York**
**           August 12, 2016**

                              _____/s/_____
                                      **John G. Koeltl**
                              **United States District Judge**

25